THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD ONOFRE, Appellant.

Fourth Department, January 24, 1980

## APPEARANCES OF COUNSEL

*Bonnie Strunk* and *Lambda Legal Defense & Education Fund, Inc. (Margot Karle* of counsel), for appellant.

*Richard A. Hennessy, Jr., District Attorney (Gail Uebelhoer* of counsel), for respondent.

*William H. Gardner, amicus curiae.*

## OPINION OF THE COURT

DOERR, J.

■ ■ Defendant was charged with the crime of consensual

sodomy in violation of section 130.38 of the Penal Law.* He moved to dismiss the charge, alleging that the statute is unconstitutional on its face. After a careful review of the law on the subject, County Court denied the motion and defendant entered a plea of guilty to consensual sodomy in violation of the statute. It is from this conviction that defendant appeals, again challenging the constitutionality of the statute. In this posture the case is properly before this court for review (see *People v Rice,* 41 NY2d 1018). We reverse.

There is no fact in dispute. Defendant by his own affidavit and his testimony before the Grand Jury, after waiving immunity, admitted engaging in the proscribed sexual conduct over a period of time with another male in the privacy of his home. The relationship, admitted by both participants, was entered into by mutual consent.

Section 130.38 of the Penal Law provides that "A person is guilty of consensual sodomy when he engages in deviate sexual intercourse with another person." Deviate sexual intercourse is defined as "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva" (Penal Law, § 130.00, subd 2). Thus, while the statute prohibits homosexual conduct, it also proscribes certain heterosexual conduct, but the latter is proscribed only between persons not married to each other. To that extent it is not the conduct which is condemned but rather the lack of jural relationship which the parties bear to each other.

The defendant argues that such penal prohibition is an improper exercise of governmental power, violative of his fundamental right to privacy, and that the due process clause requires strict judicial scrutiny of the governmental interest in such a statute. He further asserts that the distinction made in the statute between married and unmarried individuals is impermissible under the equal protection clause.

The People urge that we are bound by *Doe v Commonwealth's Attorney for City of Richmond* (403 F Supp 1199, affd without opn 425 US 901), which upheld the constitutionality of a Virginia penal law prohibiting consensual sodomy. That case, however, involved an action for a declaratory judgment

---

* Other charges of sodomy in the first degree (Penal Law, § 130.50, subd 1), sexual abuse in the first degree (Penal Law, § 130.65, subd 1), and sexual abuse in the third degree (Penal Law, § 130.55) were dismissed when complainant recanted his Grand Jury testimony relating to forcible compulsion and lack of consent.

and a permanent injunction from prosecution under the Virginia statute on the basis of possible police interference or enforcement. In the case at bar we have a defendant attacking the constitutionality of a penal statute under which he stands convicted of a crime. Furthermore, in the light of *Cooper v Morin* (49 NY2d 69), *Doe v Commonwealth's Attorney (supra)* is not binding upon our court in any event. We therefore address the subject.

Prior to 1965, privacy was not regarded as an independent constitutional right but was rather an interest given limited protection by certain constitutional provisions, e.g., the Fourth and Fifth Amendments. In *Griswold v Connecticut* (381 US 479) the Supreme Court, based upon a "zone of privacy" relationship, struck down a statute forbidding the use of contraceptives by a married couple. The right of privacy was again recognized and extended in *Eisenstadt v Baird* (405 US 438), the court holding that if the distribution of contraceptives to married persons cannot be prohibited, a ban on their distribution to unmarried persons is equally impermissible. In doing so, it stated that, "If the right of privacy means anything, it is the right of the individual, *married* or *single,* to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. See *Stanley v. Georgia,* 394 U.S. 557 (1969). See also *Skinner v. Oklahoma,* 316 U.S. 535 (1942); *Jacobson v. Massachusetts,* 197 U.S. 11, 29 (1905)." *(Eisenstadt v Baird, supra,* pp 453-454; emphasis added.) Subsequently this right of privacy was held to be a liberty guaranteed by due process of law in upholding the right of an unmarried woman to terminate her pregnancy *(Roe v Wade,* 410 US 113).

Thus it is seen that the concept of personal freedom includes a broad and unclassified group of values and activities related generally to individual repose, sanctuary and autonomy and the individual's right to develop his personal existence in the manner he or she sees fit. Personal sexual conduct is a fundamental right, protected by the right to privacy because of the transcendental importance of sex to the human condition, the intimacy of the conduct, and its relationship to a person's right to control his or her own body (see, generally, Wilkinson & White, Constitutional Protection for Personal Lifestyles, 62 Cornell L Rev 563). The right is broad enough to include sexual acts between nonmarried persons (see *Roe v Wade, supra; Eisenstadt v Baird, supra)* and inti-

mate consensual homosexual conduct (see Tribe, American Constitutional Law, p 946).

It has been said that "privacy in the conventional sense (being left alone without anyone observing) is a generally accepted prerequisite to human sexual intercourse and the protection of sexual activity seems to be an important aspect of the constitutional right to privacy cases" (Richards, Unnatural Acts and the Constitutional Right to Privacy: A Moral Theory, 45 Fordham L Rev 1281, 1303). The right to be free from unwarranted governmental intrusions into one's privacy is fundamental *(Stanley v Georgia,* 394 US 557). The privacy right, however, is not absolute *(Roe v Wade,* 410 US 113, 154-155, *supra).* To the extent that certain conduct has the potential for working harm, the State may restrict it.

What then is the State interest in regulating private, consensual sexual behavior between adults, and in particular, deviate sexual behavior in this context between homosexuals and between unmarried heterosexuals? If the interest of the State is the general promotion of morality, we are then required to accept on faith the State's moral judgment. Equally important in the community of man would seem to be some degree of toleration of ideas and moral choices with which one disagrees. The State may have a paternalistic interest in protecting an individual from self-inflicted harm or self-degrading experiences. This again presupposes the validity of the State's judgment, and outright proscription of certain activity can easily become discriminatory governmental tyranny. Curtailing activity which offends the public is a legitimate State interest but the standard to be applied in such a case is the effect that behavior might have on a reasonable person, not the most sensitive member of the community. Conduct which is carried on in an atmosphere of privacy between two parties by mutual agreement has little likelihood of offending a public not embarked on eavesdropping. A State interest based upon the prevention of physical violence and disorder fails for the same reason. Sexual conduct with an unwilling partner or one incapable of consent is punishable by other penal statutes.

Preserving marriage and the nuclear family is a legitimate State interest, as attested to by statutes which forbid adultery, even though it involves consensual acts between adults performed in private. There are those who urge that homosexual conduct should be forbidden even when conducted in private by consenting adults because it is destructive of traditional

principles of family and marriage. However, there is no empirical evidence to support that view. In an era of ever expanding sexual freedom and rising divorce rates, there has been no indication that heterosexual marriage as an institution is generally less attractive. Divorced parties continue to remarry other partners. Further, there is no indication that the state of remaining unmarried has undermined the heterosexual family. Indeed, one legitimate form of being unmarried, religious celibacy, certainly not a concept of recent origin, has not made the heterosexual family less stable. "In general, there is surely no constitutional or moral duty to marry or, more generally, to procreate; such an idea violates everything that the constitutional right to privacy was designed to protect, namely, autonomy in deciding whether and how to love" (Richards, Unnatural Acts and the Constitutional Right to Privacy: A Moral Theory, 45 Fordham L Rev 1281, 1344).

■ None of the stated reasons suggested above rises to the level necessary to support the questioned legislation. Failing this, the statute runs afoul of the constitutional right to privacy and the Fourteenth Amendment's equal protection clause as well as that amendment's due process clause and in addition the due process clause of section 6 article I of the New York State Constitution. "[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms" (NAACP v Alabama, 377 US 288, 307).

Moreover, if homosexual conduct is thus protected, heterosexual conduct between unmarried consenting adults in private is protected for the same reasons and in addition for the reason that the differentiation made between married and unmarried persons has no rational basis and is violative not only of due process but also the equal protection clause of the Constitution.

For these reasons, section 130.38 of the Penal Law is an unconstitutional exercise of State power insofar as it prohibits voluntary sexual conduct engaged in between consenting adults in private.

The defendant's conviction should, therefore, be reversed and the indictment dismissed.

CARDAMONE, SIMONS and WITMER, JJ., concur; DILLON, P. J., not participating.

Judgment reversed, on the law, and indictment dismissed.