**TRILEGIANT CORPORATION, Plaintiff,**

v.

**SITEL CORPORATION, Defendant.**

No. 09 Civ. 6492 (BSJ)(JCF).

United States District Court,
S.D. New York.

Nov. 15, 2010.

Kevin Anthony Burke, Howry LLP, New York, NY, Todd Lawrence McLawhorn, Howrey LLP, Chicago, IL, Bernard J. Garbutt, III, Morgan, Lewis and Bockius LLP, New York, NY, Kenneth Michael Kliebard, Morgan, Lewis & Bockius LLP, Chicago, IL, for Plaintiff.

Andrew John Wells, Phillips Lytle LLP, New York, NY, David S. Kaplan, Gene F. Price, Frost Brown Todd, LLC, Louisville, KY, John G. Schmidt, Buffalo, NY, for Defendant.

### MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate Judge.

Trilegiant Corporation ("Trilegiant"), a company that operates membership-based service clubs and programs, brought the instant action against Sitel Corporation ("Sitel"), a business that provides telephone-based marketing and customer relations services, for breach of contract and negligence because of Sitel's failure to preserve audio recordings of telephonic sales as allegedly mandated by a contract between the parties. Sitel seeks to compel discovery from Trilegiant that relates, in principal part, to the contractual provision allegedly breached and

to the actual damages caused to Trilegiant by the failure to preserve the recordings for an adequate time period. For the reasons set forth below, Sitel's motion is granted in part and denied in part.

*Background*

On September 12, 2005, Trilegiant entered into a contract with ClientLogic Operating Corporation ("ClientLogic"), Sitel's predecessor in interest, in which ClientLogic agreed to provide telemarketing services for Trilegiant. (Complaint ("Compl."), ¶¶ 8, 12). Pursuant to this contract, the parties executed several Statements of Work ("SOW"s), which governed the work to be performed by ClientLogic at its various call centers and the rates to be paid for such work by Trilegiant. (Answer Counterclaim ¶¶ 3, 9). The contract also allegedly incorporated a Vendor Standards Manual (the "Manual"), which set forth the protocol ClientLogic was to follow in soliciting Trilegiant customers and provided that ClientLogic would maintain audio recordings known as "proofs of enrollment" ("POE"s) of every sale for at least 48 months following the date the sale was made. (Compl., ¶¶ 8, 12, 13, 15). The Manual also provided that "[f]ailure to produce a proof of enrollment recording will result in a $250.00 fine per incident." (Compl., ¶ 15). On January 30, 2007, ClientLogic merged with Sitel, and Sitel became the responsible party under the contract with Trilegiant. (Compl., ¶ 9).

On January 4, 2008, Trilegiant requested that Sitel provide it with POEs for each sale made by Sitel from September 28, 2006, through September 1, 2007. (Compl., ¶ 20). Sitel was not able to produce any of these POEs. (Compl., ¶ 21). As a result, Trilegiant initiated this action on July 21, 2009, arguing that it is entitled to liquidated damages for breach of contract in the amount of $250 for each POE that Sitel was unable to produce, amounting or a total of $33,500,000; or, in the alternative, that it is entitled to actual damages for Sitel's "gross negligence," including "lost profits, damage to its reputation, loss of goodwill and costs of remediation." (Compl., ¶¶ 40, 41, 46; Prayer for

Relief). Sitel disputes whether the Manual was in fact incorporated into the contract and further argues that the "fine provision" of the Manual is not a liquidated damages clause but rather an unenforceable penalty. (Answer, ¶ 8; Memorandum in Support of Defendant's Motion to Compel Discovery ("Def. Memo.") at 6).

Sitel now seeks an order compelling discovery of (1) information concerning the Manual, including specific information on development of the POE policy; (2) information regarding actual lost customers, including any billing inquiries, customer complaints, or legal actions that implicate the POEs Sitel could not provide and Trilegiant's internal policies for use of such POEs; and (3) miscellaneous additional information, including information about Trilegiant's finances. I will address these requests in turn.[1]

*Discussion*

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y.2004); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 167 (S.D.N.Y.2004). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The burden of demonstrating relevance is on the party seeking discovery. *See, e.g., Mandell v. Maxon Co.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).

Once relevance has been shown, it is up to the responding party to justify curtailing discovery. *Condit*, 225 F.R.D. at 106; *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003). "[T]he court must limit the frequency or extent of discovery" when:

---

1. Most of the arguments addressed herein relate to several separate interrogatories and requests for production of documents. Those individual interrogatories and requests will not always be identified in the Discussion, but a complete list of the dispositions is contained in Appendix A.

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez*, 2003 WL 22434101, at *1. Generally speaking, discovery is limited only when "sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege," *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir.1992), although "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . . unless the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc.*, 437 U.S. at 352–53, 98 S.Ct. 2380.

### A. *Liquidated Damages Provision*

Sitel's motion to compel includes eight requests for production of documents that bear on the interpretation of the liquidated damages provision in the Manual, as well as on the parties' intentions with respect to the incorporation of that provision into the original contract and SOW at issue. These include requests for: any other contracts, agreements, SOWs, or manuals utilized by Trilegiant that contain the term "liquidated damages" or provide for a fine related to POEs; drafts, other copies, and metadata for the Manual at issue in this case; and communications related to the development of these documents, as well as identification of the individuals involved in production. (Trilegiant Corporation's Response to Sitel Operating Corporation's First Set of Request for Admissions, Interrogatories, and Requests for Production of Documents ("First Trilegiant Response"), attached as Exh. 1 to Def. Memo., Request ¶¶ 3, 4, 5, 14, 15, 18, 22, 28).

■ The crux of the dispute between the parties is the fine provision in the Manual: the parties debate whether it was incorporated into their contract; whether it was intended to be a liquidated damages provision; and whether it is enforceable as a liquidated damages provision. (Reply Memorandum in Support of Defendant's Motion to Compel Discovery ("Def. Reply") at 1–2, 4; Trilegiant Corporation's Response in Opposition to Sitel Corporation's Motion to Compel Discovery ("Pl. Memo.") at 3). Thus, anything that might further the interpretation of that provision—including information on other contracts, SOWs, and manuals utilized by Trilegiant in other transactions—is relevant and subject to discovery. *See, e.g., Pentair Water Treatment (OH) Co. v. Continental Insurance Co.*, No. 08 Civ. 3604, 2009 WL 3817600, at *3 (S.D.N.Y. Nov. 16, 2009) ("Information concerning other pollution exclusions employed by [the defendant]—what it chose to include and how it might have altered the pollution exclusion from one policy to another—could well shed light on the meaning of the exclusion in this case."); *American Eagle Outfitters, Inc. v. Payless Shoesource, Inc.*, No. 07 CV 1675, 2009 WL 152712, at *3 (E.D.N.Y. Jan. 21, 2009) ("Because the interpretation of several provisions in the Agreement here is disputed, other [similar] Agreements to which [the plaintiff] is a party . . . may well be relevant to the interpretation of the disputed provisions, at least to the extent that they contain provisions similar to those disputed here and were negotiated or drafted by the same persons."); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430, 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) (finding that, because a party's "intent is probative of [ ] interpretation" of a contract, "other similar contracts that [he] negotiated around the same time and that contained the [same term] or dealt with [the same subject] are relevant to the construction of the [disputed] agreement"). Therefore, Trilegiant must produce the requested documents concerning

liquidated damages provisions, fine provisions, and the drafting and use of such contract language.

### B. *Actual Damages*

The majority of Sitel's discovery requests seek information concerning the degree to which Trilegiant actually suffered damage as a result of Sitel's failure to maintain and supply POEs for 134,000 Trilegiant customers. These requests include: the individual identities of the 134,000 customers for which Trilegiant is requesting damages; information on how Trilegiant calculated that 134,000 customers' POEs were at issue; the individual identities of customers within that cohort of 134,000 who disputed sales, complained, or were lost due to lack of POEs; Trilegiant's policies and procedures with respect to the use of POEs and for handling customer disputes; and calculations of the actual damages suffered by Trilegiant as a result of Sitel's failure to produce POEs. (First Trilegiant Response, Interrogatory ¶¶ 1, 20, and Request ¶¶ 1, 2, 6, 7, 9, 12, 13, 17, 19, 20, 21, 23, 24, 26, 29). Trilegiant argues that these requests are irrelevant because they do not make "any fact of consequence in this lawsuit more or less likely" and because the liquidated damages clause at issue should be enforced, under New York law, "irrespective of whether the plaintiff incurred actual damages." (Pl. Memo. at 4, 12). Trilegiant further argues that these requests are utterly irrelevant because the company "informed Sitel on August 3, 2010, of its decision to streamline its case and of its stipulation regarding actual damages," which it agreed to limit to " 'cover' costs associated with transferring the program from Sitel to a new vendor following Sitel's breach." (Pl. Memo. at 12–13).

Trilegiant is correct that liquidated damages clauses will be enforced " 'where (1) actual damages may be difficult to determine and (2) the sum stipulated is not plainly disproportionate to the possible loss.' " [2] *United States Fidelity and Guaranty Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 70 (2d Cir.2004) (quoting *United Merchants and Manufacturers v. Equitable Life Assurance Society*, 674 F.2d 134, 142 (2d Cir.1982)). These provisions may be upheld only where the amount awarded " 'is a reasonable measure of the anticipated harm.' " *Id.* at 71 (quoting *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 396, 690 N.Y.S.2d 854, 861, 712 N.E.2d 1220 (1999)). "[T]he propriety of the liquidated-damages clause is to be evaluated as of the time at which the contract was made," such that actual damages are of little relevance to whether the clause is enforceable. *Sidley Holding Corp. v. Ruderman*, No. 08 Civ. 2513, 2009 WL 6047187, at *9 (S.D.N.Y. Dec. 30, 2009) (quoting *Bradford v. New York Times Co.*, 501 F.2d 51, 57 (2d Cir.1974)), *report and recommendation adopted by* No. 08 Civ. 2513, 2010 WL 963416 (S.D.N.Y. March 15, 2010).

However, this case law, coupled with Trilegiant's proposed stipulation, does not obviate the need for the discovery sought by Sitel. *Cf. Palm Bay International, Inc. v. Marchesi Di Barolo S.p.A.*, No. 09 CV 601, 2009 WL 3757054, at *3 (E.D.N.Y. Nov. 9, 2009) ("[Plaintiff] has asserted that it is willing to enter into a stipulation with Defendant withdrawing such claims to the extent that Defendant continues to interpret the Amended Complaint as seeking damages relating to goodwill .... Accordingly, the categories of discovery which are the subject of this motion are no longer relevant to the claims asserted by Plaintiff nor to any defense corresponding to such claims."). Documents that show actual damages—beyond those to which Trilegiant is willing to stipulate—are relevant to the determination of the enforceability of the liquidated damages clause because they bear upon both an evaluation of possible loss at the time of contracting and the difficulty of determining actual damages. *See 139 Fifth Avenue Corp. v. Giallelis*, No. 94 Civ. 7956, 1996 WL 154108, at *3–4 (S.D.N.Y. April 3, 1996) (finding that, although enforceability of liquidated damages clause is legal question, "there are genuine issues of disputed fact that bear on the legal question" and that "[w]ithout knowing the amount of actual damages, I cannot deter-

---

2. The contract at issue contains a New York choice-of-law provision, and neither party has disputed that New York law applies to this case. (Compl., ¶ 11; Def. Reply at 4).

mine whether the amount of liquidated damages bears a reasonable proportion to the probable loss"); *see also Malinowski v. Wall Street Source, Inc.,* No. 09 Civ. 9592, 2010 WL 3910155, at *2 (S.D.N.Y. Sept. 29, 2010) (holding that information related to mitigation of damages is relevant and discoverable since it would be inappropriate for court to determine at discovery stage if liquidated damages clause applied, although its application would obviate duty to mitigate); *Palm Bay International,* 2009 WL 3757054, at *4–5 (holding that information related to mitigation of damages is relevant and discoverable since it would be inappropriate for the court to decide substantive question of plaintiff's duty to mitigate at discovery stage). Although actual damages need not be precisely calculated here, they are relevant to this determination under the broad view of relevance applied to discovery questions. *See Melendez,* 2003 WL 22434101, at *1 ("[R]elevance for the purposes of discovery is 'an extremely broad concept.'" (quoting *Zanowic v. Reno,* No. 97 Civ. 5292, 2000 WL 1376251, at *2 (S.D.N.Y. Sept. 25, 2000))).

Thus, even though Trilegiant states its willingness to stipulate that its actual damages are limited in scope (which it has not yet formally done, *see Kowalski v. Fisher 40th and 3rd Co.,* 266 A.D.2d 514, 515, 698 N.Y.S.2d 716, 717 (2d Dep't 1999) ("To be enforceable, a stipulation must be entered into in open court or reduced to a writing, signed by the parties or counsel.")), information concerning its *actual* actual damages is still relevant to the contractual disputes driving this case because it bears upon a question of law that remains unresolved. *See Sinicropi v. Milone,* 915 F.2d 66, 68 (2d Cir.1990) ("A court . . . is not bound to accept stipulations regarding questions of law."). Furthermore, although Trilegiant may be willing to stipulate that it will *seek* only actual damages based on "cover costs," it continues to maintain that it incorporated a liquidated damages provision into the contract because it faced substantial possible damages, including lost customers and regulatory or legal action. As such, documents that illuminate the existence and scale of those damages remain relevant to evaluation of the case.

■ However, relevance of information sought must be balanced against "the burden or expense of the proposed discovery" and should not be allowed to the extent that it is "unreasonably cumulative or duplicative." Fed.R.Civ.P. 26(b)(2)(C). Sitel's request for the "name, address, and telephone number of all customers" identified by Trilegiant as having their POE lost during the period from September 22, 2006 through September 1, 2007 (a total of 134,000 customers) plus "the date of their alleged enrollment" is unreasonably cumulative. (First Trilegiant Response, Interrogatory ¶ 19). That specific information is unnecessary to the extent that Trilegiant can provide documentation substantiating their contention that Sitel should have had a total of at least 134,000 POEs for an equal number of sales made during the time period at issue and evidencing the anticipated and actual financial aspects of their contract with Sitel. (First Trilegiant Response, Request ¶¶ 7, 12, 20). Likewise, a request for all documents "related to persons solicited by Sitel pursuant to any alleged agreement between Sitel and Trilegiant" is unreasonably burdensome. (First Trilegiant Response, Request ¶ 1). However, to the extent that Sitel requests documents related to particular groups within the cohort of 134,000—such as customers who actually were lost from within that group or any customer within the group to complain or dispute a sale—these requests are appropriate in scope and relevant to a determination of Trilegiant's actual and anticipated damages. (First Trilegiant Response, Interrogatory ¶ 1, and Request ¶¶ 2, 17). Additionally, information related to any government regulatory or other legal action against Trilegiant for failure to maintain POEs, as well as information that bears upon the likelihood and scale of that risk, is relevant. (First Trilegiant Response, Request ¶¶ 13, 16, 19, 21).

All of this information tends to address the issues of whether the fine provision in the Manual was reasonably proportional to the anticipated actual loss from the breach of contract and negligence alleged, and whether it was inserted to substitute for actual damages that are difficult to calculate. Its disclosure should thus be compelled subject to the limitations enumerated here.

## C. *Miscellaneous Challenges*

In addition to opposing many of Sitel's discovery requests because they are irrelevant or overbroad, Trilegiant makes a number of specific objections based on federal and local rules and on case law.

### 1. *Local Civil Rules*

Trilegiant opposes the majority of Sitel's interrogatories as exceeding the scope of Local Civil Rule 33.3, which requires that interrogatories be limited to "seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents." S. & E.D.N.Y.R. 33.3(a). (Pl. Memo. at 6–10). Interrogatories that go beyond these topics "may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the court." S. & E.D.N.Y.R. 33.3(b). Many of Sitel's interrogatories are plainly far broader than contemplated by this rule, and for that reason Sitel's motion to compel is denied with respect to Interrogatories 18, 22, 23, 25, 28, and 29. For most of these interrogatories, the corresponding document requests—with regard to which Sitel's motion to compel is generally granted—are a decidedly more practical method of obtaining the information they seek. *See Madanes v. Madanes,* 186 F.R.D. 279, 290 (S.D.N.Y.1999) ("A document request is a far more practical means of obtaining such information than is an interrogatory. Therefore, these interrogatories violate local rule 33.3 and need not be answered.").

In addition, under Local Civil Rule 33.3, contention interrogatories, or those which "seek identification of each fact supporting an allegation," *Clean Earth Remediation and Construction Services, Inc. v. American International Group, Inc.,* 245 F.R.D. 137, 141 (S.D.N.Y.2007), should not be served until the conclusion of other discovery. S. & E.D.N.Y.R. 33.3(c); *see also Clean Earth Remediation,* 245 F.R.D. at 141 ("[N]otwithstanding the limitations of Local Civil Rule 33.3, a number of cases have held that interrogatories seeking identification of all facts

supporting a particular allegation are inherently improper."). Accordingly, Sitel's motion to compel is denied as premature with respect to Interrogatory 25.

Trilegiant also faults Sitel for failing to comply with Local Civil Rule 37.1, which requires that the moving party set forth individually and specifically each discovery request to which its motion is addressed and the "grounds upon which the moving party is entitled to prevail as to each request or response." S. & E.D.N.Y.R. 37.1. (Pl. Memo. at 6). Trilegiant notes that this failure camouflages Sitel's violation of Local Civil Rule 33.3; this argument is mooted by the discussion above. Trilegiant also argues that this failure impedes its ability to respond specifically to Sitel's arguments on each interrogatory and request for production of documents; however, given the parties' substantial submissions and communications regarding these discovery disputes, Trilegiant's ability to respond has not been meaningfully prejudiced. Similarly, Trilegiant argues that Sitel has failed to comply with Local Civil Rule 37.2, which requires that a moving party request an informal conference with the court before making a motion to compel discovery. S. & E.D.N.Y.R. 37.2. (Pl. Memo. at 1). As documented in their submissions and in my Memorandum Endorsement dated September 7, 2010, the parties have conferred extensively in an effort to resolve these discovery issues; the failure to explicitly request and hold a conference with the court does not warrant a denial or delay in deciding the merits of Sitel's motion at this stage. *See Time Inc. v. Simpson,* No. 02 Civ. 4917, 2002 WL 31844914, at *2 (S.D.N.Y. Dec. 18, 2002).

### 2. *Federal Rules*

Trilegiant also faults Sitel for exceeding the number of interrogatories allowed pursuant to Rule 33 of the Federal Rules of Civil Procedure. (Pl. Memo. at 5–6). However, given the rejection of many of Sitel's interrogatories for violation of the local civil rules, this objection is moot.

### 3. *Income Tax Returns*

 Trilegiant objects in particular to Request for Production of Documents 8, in which Sitel requests that it produce copies of its federal income tax returns from 2003 through the present. (Pl. Memo. at 16–17). Discovery of tax returns requires satisfaction of a higher standard than discovery of other documents; a court will "only order their disclosure where it finds both that the returns are relevant to the subject-matter of the action and that there is a compelling need therefor because the information contained therein is not 'otherwise readily obtainable.'" *Hamm v. Potamkin*, No. 98 Civ. 7425, 1999 WL 249721, at *2 (S.D.N.Y. April 28, 1999) (quoting *Securities and Exchange Commission v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y.1985)). Sitel has not met this higher burden; the relevance of Trilegiant's overall profits to the instant matter is attenuated, and the documents related to the financial aspects of Trilegiant's contract with Sitel that must be produced pursuant to this Order should provide adequate information for determining whether the fine provision in the Manual was "plainly disproportionate" to any possible loss from Sitel's breach of contract as well as for calculating actual damages suffered from the breach of contract.

### 4. *Duplication*

A number of Sitel's interrogatories are duplicative of its document requests. Because Trilegiant is now required to produce documents responsive to certain requests, Sitel's motion to compel is denied with respect to Interrogatories 8, 9, 12, 13, 14, and 15.

### 5. *Premature Requests*

Trilegiant objects to Request for Production of Documents 11, which demands documents to be relied upon by any witness at deposition or at trial, as premature. (Pl. Memo. at 17). Although this request was originally premature, we are now approaching the close of discovery, so this objection is no longer valid. Sitel's motion to compel is therefore granted with respect to Request for Production of Documents 11, but Trilegi-

ant's response may be limited to any documents not otherwise produced during discovery. Likewise, Trilegiant's objection to Interrogatory 20 as premature fails; further, this Interrogatory seeks a computation of damages and is thus appropriate and timely under Local Civil Rule 33.3(a) and Rule 26 of the Federal Rules of Civil Procedure. Trilegiant must provide an answer.

### 6. *Completeness*

 Trilegiant contends that its disclosure is complete with respect to Requests for Production of Documents 5, 6, 9, 14, 15, 19, 22, 24, 28, and 29. (Pl. Memo. at 21–24). Sitel disagrees. (Chart attached as Exh. H to Def. Reply). Sitel has not pointed to any specific documents that Trilegiant has failed to produce, so there is no basis for ordering Trilegiant to respond more fully to these requests. Nonetheless, Trilegiant is reminded of its responsibility under Rule 26(e) of the Federal Rules of Civil Procedure to supplement its discovery responses and is directed to ensure the completeness of its responses as it propounds the other responses mandated by this Order.

### 7. *Request for Admission*

Trilegiant's response to Sitel's Request for Admission 1 is sufficient; Sitel's motion to compel a response to this request is denied.

### *Conclusion*

For the reasons discussed above, Sitel's motion to compel discovery is granted in part and denied in part. Trilegiant shall comply with Sitel's discovery requests as set forth in the Appendix within 30 days of the date of this Order.

SO ORDERED.

### *Appendix A*

| Request | Disposition[†] |
| --- | --- |
| Interrogatory 1 | Granted (AD) |
| Interrogatory 9 | Denied (Duplicative) |
| Interrogatory 13 | Denied (Duplicative) |

† Bases for disposition: LD, liquidated damages; AD, actual damages.

| | |
|---|---|
| Interrogatory 14 | Denied (Duplicative) |
| Interrogatory 15 | Denied (Duplicative) |
| Interrogatory 18 | Denied (Local Rule 33.3) |
| Interrogatory 19 | Denied (Scope) |
| Interrogatory 20 | Granted (AD) |
| Interrogatory 22 | Denied (Local Rule 33.3) |
| Interrogatory 23 | Denied (Local Rule 33.3) |
| Interrogatory 25 | Denied (Local Rule 33.3) |
| Interrogatory 28 | Denied (Local Rule 33.3) |
| Interrogatory 29 | Denied (Local Rule 33.3) |
| Request 1 | Denied (Scope) |
| Request 2 | Granted (AD) |
| Request 5 | Granted (LD) |
| Request 6 | Granted (AD) |
| Request 7 | Granted (AD) |
| Request 8 | Denied (Tax) |
| Request 9 | Granted (AD) |
| Request 11 | Denied (Premature) |
| Request 12 | Granted (AD) |
| Request 13 | Granted (AD) |
| Request 14 | Granted (LD) |
| Request 15 | Granted (LD) |
| Request 17 | Granted (AD) |
| Request 19 | Granted (AD) |
| Request 20 | Granted (AD) |
| Request 21 | Granted (AD) |
| Request 22 | Granted (LD) |
| Request 23 | Granted (AD) |
| Request 24 | Granted (AD/LD) |
| Request 26 | Granted (AD/LD) |
| Request 28 | Granted (LD) |
| Request 29 | Granted (AD) |

Admission 1 Denied (Moot)