**TRILEGIANT CORPORATION, Plaintiff,**

**v.**

**SITEL CORPORATION, Defendant.**

**No. 09 Civ. 6492(BSJ)(JCF).**

United States District Court,
S.D. New York.

July 1, 2011.

Kevin Anthony Burke, Howrey LLP, New York, NY, Todd Lawrence McLawhorn, Howrey LLP, Chicago, IL, Bernard J. Garbutt, III, Morgan, Lewis and Bockius LLP, New York, NY, Jayesh Santkumar Hines-Shah, Kenneth Michael Kliebard, Morgan, Lewis and Bockius LLP, Chicago, IL, for Plaintiff.

Andrew John Wells, Phillips Lytle LLP, New York, NY, David S. Kaplan, Gene F. Price, Frost Brown Todd, LLC, Louisville, KY, John G. Schmidt, Phillips Lytle LLP, Buffalo, NY, for Defendant.

*MEMORANDUM AND ORDER*

JAMES C. FRANCIS IV, United States Magistrate Judge.

Trilegiant Corporation ("Trilegiant") brings this contract action against Sitel Corporation ("Sitel"), alleging that Sitel's failure to maintain audio recordings of customer service calls it conducted on Trilegiant's behalf violated the terms of their contract. Sitel now moves to compel Trilegiant's response to various interrogatories and document requests, some of which were the subject of previous discovery orders. Sitel also seeks sanctions against Trilegiant for its failure to comply with those prior orders and an extension of time to complete discovery. For the reasons set forth below, Sitel's motion is granted in part and denied in part.

*Background*

The factual background of this dispute was set forth in my order of November 15, 2010 (the "11/15/10 Order")/ which required Trilegiant to produce certain discovery by December 15, 2010. Specifically, the plaintiff was ordered to respond in full to Sitel's Interrogatories 1 and 20, and Document Requests 2, 5, 6, 7, 9, 12, 13, 14, 15, 17, 19, 20, 21, 22, 23, 24, 26, 28, and 29. (Order dated Nov. 15, 2010 ("11/15/10 Order")). Following entry of the 11/15/10 Order, the parties participated in a telephonic conference at which they clarified the scope of Trilegiant's outstanding discovery; they subsequently memorialized their agreement in a consent order, which I signed on February 16, 2011 (the "2/16/11 Order"). Pursuant to the 2/16/11 Order, Trilegiant agreed to produce the following categories of documents by February 21, 2011: (1) documents further detailing its damages; (2) documents arising out of any other claim or litigation involving the type of audio recordings, known as Proofs of Enrollment ("POEs"), that Sitel allegedly failed to maintain; (3) records of complaints from customers enlisted by Sitel; (4) records of Trilegiant's internal audits, including those conducted by HyperQuality, a third-party vendor; and (5) "business planning documents" detailing Trilegiant's projected earnings from its various contracts with Sitel. (2/16/11 Order). Trilegiant also agreed to update its privilege log to include any additional documents with respect to which a privilege was asserted. (2/16/11 Order, ¶ 4).

Between the issuance of these two orders, however, a significant upheaval occurred at the offices of the plaintiff's lead counsel, Kenneth M. Kliebard. In January of 2011, Mr. Kliebard announced his resignation from the partnership of Howrey LLP ("Howrey") and his intention to join the law firm of Morgan, Lewis & Bockius LLP ("Morgan Lewis"). (Declaration of Kenneth M. Kliebard dated May 17, 2011 ("Kliebard Decl."), ¶ 3). As a result, Trilegiant requested that Howrey send its case file with Mr. Kliebard so that he could continue representing it on this and other matters. (Kliebard Decl., ¶ 4). Before that transfer could be completed or Mr. Kliebard could assume his new employment, however, Howrey's Chicago office, where Mr. Kliebard worked and where he kept the paper and electronic documents associated with this litigation, suddenly closed on January 31, 2011. (Kliebard Decl., ¶¶ 5–6). Mr. Kliebard had only a few hours to gather his belongings and was not permitted to take any client files with him. (Kliebard Decl., ¶ 5). He subsequently encountered significant difficulty during multiple attempts to retrieve those files—for example, he was promised delivery of files that never showed up, and some files were sent to an off-site storage facility without his permission. (Kliebard Decl., ¶¶ 9–16). These difficulties were due in part to Howrey's dissolution, which took effect on March 15, 2011. (Kliebard Decl., ¶¶ 7, 13; Memorandum in Support of Sitel Operating Corporation's Renewed Motion to Compel Discovery and Motion for Sanctions ("Def. Memo."), Exh. A; Plaintiff Trilegiant Corporation's Notice of Bankruptcy Filing of Non-party Howrey LLP dated June 15, 2011). Mr. Kliebard did not begin receiving case files relevant to this matter at his new offices until March 24, 2011, and the last of the hard copy files did not arrive until May 9, 2011. (Kliebard Decl., ¶¶ 10, 15; Declaration of Elsa Doi dated May 17, 2011 ("Doi Decl."), ¶ 5). Moreover, the paper files were delivered in a state of disarray, and significant efforts were required to identify rele-

vant documents. (Kliebard Decl., ¶ 12; Doi Decl., ¶ 6). The electronic case files became available only on May 16, 2011. (Kliebard Decl., ¶ 14; Doi Decl., ¶ 7).

As a result of these complications, Trilegiant was unable to meet the February 21, 2011 production deadline established by the 2/16/11 Order and continued to produce documents and supplemental materials through May of this year. (Kliebard Decl., ¶¶ 19–22; Def. Memo. at 3–4 & Exhs. A, B; Letter of Kenneth M. Kliebard dated March 15, 2011, attached as Exh. F to Def. Memo., at 2; Letter of Kenneth M. Kliebard dated May 16, 2011, attached as Exh. D to Def. Memo.; Letter of Kenneth M. Kliebard dated May 17, 2011 ("5/17/11 Kliebard Letter"), attached as Exh. M to Reply Memorandum in Further Support of Sitel Operating Corporation's Renewed Motion to Compel Discovery and Motion for Sanctions ("Def. Reply Memo.")). Trilegiant admits that at least one category of documents still has not been produced. (Kliebard Decl., ¶ 24; Memorandum in Opposition to Defendant's Renewed Motion to Compel Discovery and Motion for Sanctions ("Pl. Opp. Memo.") at 6, 8, 13).

Dissatisfied by Trilegiant's delayed and allegedly insufficient production, Sitel filed this motion on April 18, 2011. It maintains that multiple categories of requested documents remain missing and asks the Court to (1) compel production of all outstanding discovery; (2) impose sanctions on Trilegiant for its delinquent production; and (3) extend the discovery deadline, which expired on May 31, 2011, for an additional year. (Def. Memo. at 5–9).

*Discussion*

**A. Production and Sanctions**

■ Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y.2004); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). "Relevant information need not be admissible at the trial

if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The burden of demonstrating relevance is on the party seeking discovery. *See, e.g., Mandell v. Maxon Co.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).

■ Once relevance has been shown, it is up to the responding party to justify curtailing discovery. *Condit*, 225 F.R.D. at 106. "[T]he court must limit the frequency or extent of discovery" where:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003). Generally speaking, discovery is limited only when it is "sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir.1992).

■ Rule 37(b)(2)(A) provides in pertinent part that "[i]f a party ... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Such orders may include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" or "prohibiting the disobedient party from supporting or opposing designated

claims or defenses, or from introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(A)(i), (ii). In determining the appropriate sanction, courts consider " '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance.' " *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302–03 (2d Cir.2009) (second alteration in original) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y.2002)). They also take into account the extent to which the prevailing party has been and will be prejudiced by the defaulting party's noncompliance. *See Anthropologie, Inc. v. Forever 21, Inc.*, No. 07 Civ. 7873, 2009 WL 690126, at *3 (S.D.N.Y. March 13, 2009).

Here, Sitel alleges that Trilegiant has failed to respond adequately to Interrogatories 1 and 20, and to Document Requests 1, 2, 3, 4, 5, 6, 7, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28, and 29. (Def. Memo. at 5–6). Production with respect to some of these requests—in particular, Document Requests 1, 3, 4, 11, 16, 18, and 25—was not compelled by either of my prior discovery orders. Nevertheless, the defendant asks that Trilegiant be ordered to produce all outstanding responsive documents and be sanctioned for its late production. The discovery sought can be grouped into several categories, which I will address in turn.

### 1. Documents Related to Trilegiant's Damages

■ The largest category of allegedly outstanding discovery is comprised of documents detailing Trilegiant's actual damages.

#### a. Interrogatories 1 and 20, and Document Requests 2, 7, 12, and 17

These requests seek itemization of Trilegiant's claimed damages, details of any customers lost due to Sitel's alleged breach, and any other documents supporting Trilegiant's claimed actual damages. (Chart of Sitel's Discovery Requests ("Def. Reqs."), attached as Exh. H to Def. Memo., at 1–2, 5, 6–7, 9–10, 11–12, 14–17). Responses to these requests were compelled by both the 11/15/10 Order and the 2/16/11 Order. (11/15/10 Order at 19–20 app. A; 2/16/11 Order, ¶¶ 1, 3, 6). Trilegiant claims that it has fulfilled these requests by producing "a spreadsheet generated from its customer database identifying those customers disputing their enrollment with Trilegiant who were generated by Sitel." (Pl. Opp. Memo. at 7–8; *see also* Customer Withdrawal Spreadsheet, attached as Exh. C to Def. Memo.). Sitel responds that the spreadsheet is "vague" and that Trilegiant should produce the hard-copy customer correspondence, or "white mail," that underlies some of the data encoded in the spreadsheet. (Def. Reply Memo. at 5–6, 6–8). Trilegiant maintains that producing the white mail would be unduly burdensome because it would take "hundreds of hours of employee time" to retrieve all of the relevant documents, which are stored in an off-site facility in a manner that does not "facilitate easy retrieval." (Pl. Opp. Memo. at 9–10).

The spreadsheet produced by Trilegiant is indeed vague—even considered alongside the key translating the various codes used in the spreadsheet, it is often difficult to discern whether a customer's reason for cancelling a service would have been meaningfully illuminated or the cancellation itself avoided by reference to the missing POE. (Customer Withdrawal Spreadsheet; Explanation of Codes, attached to 5/17/11 Kliebard Letter). Nevertheless, the cost of producing underlying white mail is significant, especially considering that it appears that only a small number of customers cancelled by mail rather than through other means. (Customer Withdrawal Spreadsheet at Bates Nos. 6412, 6415). Therefore, if Sitel desires to review the white mail—either all of it or some sample to confirm the spreadsheet's accuracy—it shall bear the cost of its retrieval. *See Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428–32 (S.D.N.Y.2002) (shifting cost for document production to requesting party where search was costly and complex, documents were of no use to producing party, and both parties had equal resources).

#### b. *Document Request 20*

This request seeks business planning documents detailing Trilegiant's projected earnings from its various contracts with Sitel, including the one at issue in this litigation. (Def. Reqs. at 18–19). To the extent that the plaintiff has not realized those profits due to the breach alleged here, these documents are relevant to its claim for actual damages. Responsive production was ordered by both the 11/15/10 Order and the 2/16/11 Order. (11/15/10 Order at 20 app. A; 2/16/11 Order, ¶ 7). Sitel maintains that production with respect to this document request remains outstanding, and Trilegiant has not denied that claim. (Def. Reqs. at 18–19). Therefore, Trilegiant shall respond in full to document request 20 by July 22, 2011, or it will be precluded from using any such documents to argue that it has suffered lost profits as a result of Sitel's alleged breach. *See* Fed. R.Civ.P. 37(b)(2)(A)(ii).

#### c. *Document Request 25*

Document request 25 seeks documentation of the costs incurred by Trilegiant in hiring and compensating "third-party vendors who now perform services Sitel formerly provided to Trilegiant." (Def. Reqs. at 22). Documents responsive to this request would further illustrate the actual damages suffered by Trilegiant as a result of Sitel's alleged breach of their agreement. Sitel did not previously move to compel production with respect to this request, and thus it was not included in either the 11/15/10 Order or the 2/16/11 Order; however, Trilegiant did agree to provide responsive documents. (Def. Reqs. at 22; 11/15/10 Order at 7–8). Sitel states here that "Trilegiant has produced some documents, but no full agreements, correspondence, or estimates." (Def. Reqs. at 22). To the extent that Trilegiant fails to locate documents sufficient to demonstrate this category of its actual damages, its self-inflicted penalty will accrue when it is later unable to prove those damages. To ensure that this consequence follows, Trilegiant shall produce any additional documents responsive to this request by July 22, 2011 or forfeit the ability to rely on any documents not produced by then when it seeks to prove its damages. *See* Fed.R.Civ.P. 37(b)(2)(A)(ii).

#### d. *Document Request 29*

■ This request seeks the production of Trilegiant's policies and procedures for responding to a customer's request to cancel its membership or dispute its enrollment in a service. (Def. Reqs. at 29). At the time the 11/15/10 Order was issued, Trilegiant maintained that its production was complete with respect to this request, although to that point it had produced "only a handful of pages of documents." (Def. Reqs. at 24–25; Letter of Kenneth M. Kliebard dated Dec. 21, 2010 ("12/21/10 Kliebard Letter"), attached as Exh. J to Def. Memo., at 3; 11/15/10 Order at 16–17). Trilegiant cannot produce what does not exist, and Sitel has made no showing that Trilegiant's search was inadequate.

#### 2. *Documents Related to Claims or Lawsuits*

Document requests 13, 16, 19, and 21 seek documents related to any lawsuit, government enforcement action, or claim for indemnification involving Trilegiant and relating to a failure to maintain POEs, including those arising out of the breach alleged here. (Def. Reqs. at 12–14, 18, 19). Such documents are relevant to the extent that they illustrate the actual damages suffered by the plaintiff.

#### a. *Document Requests 13 and 16*

■ Document request 13 seeks documents regarding any claims or lawsuits related to an alleged failure to maintain POEs filed by or against Trilegiant within the past ten years. (Def. Reqs. at 12–13). Trilegiant was ordered to produce all documents responsive to this request in both the 11/15/10 Order and the 2/16/11 Order. (11/15/10 Order at 19 app. A; 2/16/11 Order, ¶ 2). In response to this request—and also to document request 16, which was not included in either discovery order—Trilegiant agreed to produce "copies of complaints and/or settlement agreements concerning lawsuits by individuals or government enforcement actions that concern or relate to" POEs. (Def. Reqs. at 12–14; 12/21/10 Kliebard Letter at 2). Trilegiant admits that it has not completed this production but states that it intended to do so by June 6, 2011. (Pl. Opp. Memo. at

8). To the extent that Trilegiant has not yet produced all responsive documents, it shall do so by July 22, 2011. Despite Trilegiant's admittedly late production, further sanctions are not warranted because the delay was caused by forces outside the plaintiff's control: Howrey's sudden dissolution and its resulting failure to forward Trilegiant's case file promptly to Mr. Kliebard's new offices. *See M'Baye v. New Jersey Sports Production, Inc.*, Nos. 06 Civ. 3439, 05 Civ. 9581, 2008 WL 1849777, at *4 (S.D.N.Y. April 21, 2008) (declining to impose sanctions without further evidence of wilfulness where plaintiff failed to produce documents in possession of his former manager, who refused give them to plaintiff despite repeated requests). Moreover, any prejudice to Sitel as a result of this delay is mitigated by the extension of the discovery deadline granted below. (Def. Memo. at 8–9).

### b. Document Request 19

Document request 19 seeks copies of any claims for indemnification made by Trilegiant as a result of Sitel's alleged breach. (Def. Reqs. at 18). Trilegiant has long maintained that production with respect to this request is complete. (12/21/10 Kliebard Letter at 3; 11/15/10 Order at 16). Further production therefore cannot be compelled; however, Trilegiant is reminded of its responsibility under Rule 26(e)(1) of the Federal Rules of Civil Procedure to supplement its discovery responses.

### c. Document Request 21

Document request 21, a response to which was compelled by both the 11/15/10 Order and the 2/16/11 Order, seeks details regarding Trilegiant's claim that Sitel's alleged failure to maintain POEs violated "a number of federal and state consumer protection statutes and regulations." (Def. Reqs. at 19; Complaint ("Compl."), ¶ 16; 11/15/10 Order at 20 app. A; 2/16/11 Order, ¶ 6). A violation of such statutes or regulations may have subjected Trilegiant to fines or other monetary penalties, thus increasing its actual damages. Although Trilegiant has updated its privilege log with documents that may reference this request, it has not produced any responsive documents. (12/21/10 Kliebard Letter at 3; Privilege Log revised May 16, 2011, attached as Exh. L to Def. Reply Memo.; Def. Reqs. at 19).

■ To the extent that Sitel seeks documentation of actual lawsuits filed or fines assessed against Trilegiant, those requests have been addressed. Sitel can also explore the basis for this allegation through contention interrogatories once discovery is complete. However, Sitel is not entitled to documents created by Trilegiant's counsel that assess its obligations with respect to external laws and regulations, and any such documents were properly withheld and included in the plaintiff's privilege log. Sitel has shown no basis to dispute the plaintiff's contention that its production with respect to this document request is complete, and Sitel's application is therefore denied with respect to document request 21.

### 3. Documents Elucidating the Parties' Agreement

■ This category of document requests is relevant to two core disputes in this litigation. The first is whether the parties' contract incorporated a document known as the Vendor Standards Manual (the "Manual"), which required Sitel to maintain POEs and imposed a "fine" of $250 for each unpreserved POE. (Compl., ¶¶ 8, 13, 15; Answer & Counterclaim ("Ans."), ¶ 8). The second is whether, to the extent the Manual was incorporated, its fine provision is nevertheless unenforceable. (Compl. at 9 & ¶¶ 22, 40; Ans. at 7). Sitel has propounded document requests bearing on both of these contract interpretation disputes, and the 11/15/10 Order required the plaintiff to produce relevant documents, including "any [ ] contracts, agreements, [ ] or manuals utilized by Trilegiant that contain the term 'liquidated damages' or provide for a fine related to POEs; drafts, other copies, and metadata for the Manual at issue in this case; and communications related to the development of these documents." (11/15/10 Order at 5). Sitel maintains that much of this discovery remains outstanding.

### a. *Document Requests 5, 15, and 28*

These requests seek drafts, copies, metadata, and communications related to the Manual at issue in this case. (Def. Reqs. at 8, 13, 23–24). The 11/15/10 Order explicitly required the production of these materials, although Trilegiant maintained at the time that its responses were complete. (11/15/10 Order at 5–7, 16–17). Trilegiant has since reiterated that its production is complete with respect to these requests. (12/21/10 Kliebard Letter at 2–3). Nevertheless, Sitel claims that it has yet to receive a complete, signed copy of the Manual underlying this litigation, any metadata related to the Manual, or any internal communications referencing negotiation of the Manual's terms. (Def. Reqs. at 8, 13, 23–24; Def. Reply Memo. at 3–4).

To the extent that the plaintiff is unable to produce a copy of the Manual signed by the parties here or other documents supporting its interpretation of their agreement, that failure prejudices the plaintiff, not the defendant, since it is the plaintiff that contends that the Manual was incorporated into the parties' contract. Thus, Sitel is not prejudiced by the plaintiff's failure to produce these documents unless Trilegiant later relies upon them in seeking to prove its allegations. Therefore, Trilegiant is precluded from later relying upon any documents responsive to these requests that it does not produce before July 22, 2011. *See* Fed.R.Civ.P. 37(b)(2)(A)(ii).

### b. *Document Requests 3, 4, 14, and 18*

These requests seek other manuals, contracts, agreements, or communications containing the term "liquidated damages" or providing for a fine related to the failure to maintain POEs. (Def. Reqs. at 7–8, 13, 17–18).

The defendant did not previously move to compel responses to document requests 3, 4, or 18, and these requests were not included in the 2/16/11 Order; however, they were explicitly referenced and their substance ordered produced by the 11/15/10 Order. (11/15/10 Order at 5–7). Moreover, all three requests seek documents that are highly relevant to the interpretation of the Manual's

fine provision—a topic at the core of this litigation. Sitel maintains that complete responses to these requests remain outstanding. (Def. Reqs. at 7–8, 17–18; Def. Reply Memo. at 4–5). Trilegiant shall therefore produce all documents in its possession that are responsive to document requests 3, 4, and 18 by July 22, 2011 or forfeit the ability to rely on those documents in later seeking to prove its allegations and damages. *See* Fed.R.Civ.P. 37(b)(2)(A)(ii).

With respect to document request 14, which seeks "all documents drafted by [Trilegiant] and sent to Sitel that contain the term 'liquidated damages,'" Trilegiant states that its production is complete. (Def. Reqs. at 13; 11/15/10 Order at 16–17; 12/21/10 Kliebard Letter at 3). While Sitel questions the veracity of this statement, pointing out that "Trilegiant has produced no documents containing the term 'liquidated damages,'" Sitel has not specifically identified any withheld documents that are responsive to this request. (Def. Reqs. at 13). This failure is especially notable since Sitel would presumably possess its own copy of any responsive document and could thus use it to support the claim that the plaintiff is shirking its discovery obligations. The defendant cannot simply rely on speculation that Trilegiant is withholding documents. *See Rubinow v. Ingelheim,* No. 3:08–cv–1697, 2010 WL 1882320, at *7 (D.Conn. May 10, 2010) (denying motion to compel responses to document requests where movant was unable to identify any outstanding documents or "articulate any particular reason why she believes that the [opposing party] is withholding responsive documents, apart from her counsel's speculation"). Therefore, Sitel's motion to compel is denied with respect to document request 14.

### 4. *Internal Reviews (Document Requests 6, 9, 22, 23)*

Document requests 6, 9, 22, and 23 seek records of any correspondence, agreements, audits, or investigations resulting from Sitel's alleged breach of its contract with Trilegiant. (Def. Reqs. at 8–9, 10–11, 19–22). Trilegiant states that its production with respect to all of these requests is complete—among other documents, it has produced various communi-

cations between Trilegiant, Sitel, and Hyper-Quality, and a chart compiled by HyperQuality following an audit it performed of Sitel's work for Trilegiant. (12/21/10 Kliebard Letter at 3; Pl. Opp. Memo. at 7–8; Chart, attached as Exh. I to Def. Memo.). Sitel maintains that the plaintiff's responses are incomplete and that its late production of the communications between Trilegiant, Sitel, and HyperQuality proves that it is not complying with its discovery obligations. (Def. Reply Memo. at 9).

■ As discussed above, sanctions are not warranted for Trilegiant's delayed production. Furthermore, Sitel has failed to identify a single document responsive to these requests that Trilegiant is currently withholding. Mere speculation as to the existence of additional documents is insufficient to warrant an order to compel. *See Rubinow*, 2010 WL 1882320, at *7. Nevertheless, should Sitel subpoena HyperQuality's records and discover that Trilegiant has withheld relevant, responsive documents, it is free to renew its application for sanctions.

### 5. *Additional Outstanding Requests*

#### a. *Document Requests 1 and 11*

The defendant's previous motion to compel responses to document requests 1 and 11 was denied by the 11/15/10 Order. (11/15/10 Order at 19 app. A). Document request 1 remains overbroad in scope and document request 11 remains premature; thus, Sitel's motion to compel is denied with respect to these requests.

#### b. *Document Requests 24 and 26*

Document requests 24 and 26 seek documents underlying Trilegiant's discovery filings—in particular, documents relied upon by Trilegiant in drafting its Initial Disclosures and its responses to interrogatories, respectively. (Def. Reqs. at 22, 23). Trilegiant maintains that it has completed production with respect to document request 24; although Sitel challenges this assertion, it has not identified any specific documents that Trilegiant has failed to produce. (11/15/10 Order at 16; 12/21/10 Kliebard Letter at 3; Def. Reqs. at 22). Therefore, its

request to compel production is denied. In contrast, Trilegiant has not confirmed that its production is complete with respect to document request 26 and, in fact, it is unlikely to be complete given that Trilegiant admits that it is continuing to produce responsive documents. (Pl. Opp. Memo. at 8). Therefore, Trilegiant shall produce all responsive materials with respect to document request 26, or confirm the absence of such materials, by July 22, 2011.

### B. *Discovery Schedule*

■ Finally, Sitel requests that the discovery schedule be expanded by one year, thereby extending the parties' deadline to complete all discovery from May 31, 2011 to May 31, 2012. (Def. Memo. at 8–9; Def. Reply Memo. at 10). Although Trilegiant does not oppose an extension of the discovery deadline per se, it objects to the length of the extension requested by Sitel. (Pl. Opp. Memo. at 14–15).

Sitel first argues that a one-year extension is appropriate because the plaintiff has had "almost one and one-half years of reviewing Sitel's full production," and thus fairness requires providing the defendant an equal amount of time to review Trilegiant's discovery. (Def. Memo. at 8). One year is nevertheless an unnecessarily long amount of time. Trilegiant has already produced the majority of its responsive documents, and Sitel has had considerable time to review that material. (Pl. Opp. Memo. at 7–8). One month is sufficient for the defendant to review any additional production and request follow up.

Sitel further argues that a one-year extension is justified by the absence of its lead counsel, Gene Price, who was called to serve in Afghanistan for a one-year period beginning in April 2011. (Def. Memo. at 8–9; Def. Reply Memo. at 10; Letter of Gene F. Price dated April 13, 2011, attached as Exh. G to Def. Memo., at 1). Mr. Price's absence does not provide sufficient reason to delay this entire case for an additional year; there are other competent attorneys in Mr. Price's office who are already conducting this litigation in his absence. Therefore, as indicated above, Trilegiant is ordered to provide any additional discovery responsive to this order

by July 22, 2011. The parties shall then have until August 22, 2011 to request and produce any relevant follow-up discovery occasioned by Trilegiant's additional production.

*Conclusion*

For the reasons discussed above, Sitel's motion to compel is granted in part and denied in part. Trilegiant shall comply with Sitel's discovery requests as set forth in this Order by July 22, 2011.

SO ORDERED.